<table>
<tr><td colspan="3" align="center">Estado Libre Asociado de Puerto Rico<br>TRIBUNAL DE APELACIONES<br>PANEL I</td></tr>
<tr>
<td>HESYKA MORALES GONZÁLEZ<br><br>Demandante - Recurrida<br><br>v.<br><br>CONSEJO DE TITULARES CONDOMINIO BAYAMONTE<br><br>Demandada – Peticionaria</td>
<td>KLCE202400386</td>
<td>*Certiorari* procedente del Tribunal de Primera Instancia, Sala de Bayamón<br><br>Caso núm.: BY2023CV00744 (403)<br><br>Sobre: Cobro de Dinero – Regla 60</td>
</tr>
</table>

Panel integrado por su presidente, el Juez Sánchez Ramos, el Juez Pagán Ocasio, el Juez Marrero Guerrero y la Jueza Boria Vizcarrondo.

Sánchez Ramos, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 30 de abril de 2024.

El Tribunal de Primera Instancia ("TPI") denegó una moción de desestimación de una reclamación relacionada con la distribución, a los titulares de un condominio, del dinero recibido de parte de una aseguradora. Según se explica a continuación, concluimos que erró el TPI, pues (i) el TPI no tiene jurisdicción sobre dicho asunto y (ii), de todas maneras, el mismo ya fue adjudicado, de forma final y firme, por la agencia con jurisdicción.

I.

En febrero de 2023, la Sa. Hesyka Morales González (la "Titular") presentó la acción de referencia, sobre cobro de dinero (la "Demanda"), en contra del Consejo de Titulares del Condominio Bayamonte (el "Condominio"). Alegó que el Condominio le debía $2,500.00 "por concepto del desglose del seguro de fondos por daños del huracán María". Se anejó una carta en la cual el abogado de la Titular le comunicó al Condominio que ella tenía derecho a la referida cuantía porque esa fue "la cantidad aprobada por Mapfre".

El 11 de mayo, el Condominio solicitó la desestimación de la Demanda (la "Moción"). Planteó que ya la Titular había presentado una querella (la "Querella") ante el Departamento de Asuntos del Consumidor ("DACo"), en agosto de 2019, mediante la cual impugnó, precisamente, el plan de distribución de la indemnización recibida por la aseguradora, el cual fue adoptado por el Condominio de forma unánime (el "Plan").

El Condominio expuso que el DACo había desestimado la Querella a través de una Resolución de febrero de 2020 (la "Decisión Administrativa"), la cual ya era final y firme. Por tanto, el Condominio planteó que, por razón de cosa juzgada o impedimento colateral por sentencia, la Demanda debía ser desestimada.

Además, el Condominio resaltó que la Decisión Administrativa era correcta, pues la Titular se había "allanado al plan de distribución de fondos del seguro", de conformidad con el cual le correspondían $500.00.

La Titular se opuso a la Moción; arguyó que no aplicaba la doctrina de cosa juzgada porque "los hechos y remedios solicitados … ante el DACo y en la Demanda no son exactamente los mismos". Adujo que en la Demanda no se impugna el Plan, sino que se reclama la cuantía que "se desprende del documento oficial de la … aseguradora", en el cual se "ajustó la indemnización por apartamento", y el cual la Titular no tenía cuando se presentó la Querella.

Mediante una Orden notificada el 12 de julio (la "Orden"), el TPI denegó la Moción; razonó que "el caso en el DACo no resolvió la controversia sobre la deuda" reclamada por la Titular.

El 30 de julio (un día antes del primer día laborable en el Poder Judicial, luego del 27 de julio, el cual fue feriado), el Condominio solicitó la reconsideración de la Orden, lo cual fue denegado por el TPI mediante una Resolución notificada el 4 de marzo.

Inconforme, el 3 de abril, el Condominio presentó el recurso que nos ocupa, en el cual reproduce lo planteado en la Moción. Además, el Condominio señala que DACo es el "foro con jurisdicción primaria exclusiva para revisar las determinaciones del Consejo de Titulares". Mediante una Resolución de 4 de abril, le ordenamos a la Titular mostrar causa por la cual no debíamos expedir el auto solicitado y revocar la Orden.

La Titular compareció; reiteró lo planteado ante el TPI en oposición a la Moción. Resolvemos.

II.

La aplicación más común de la doctrina de cosa juzgada o *res judicata* conlleva que la sentencia dictada, en un pleito anterior, impida que se litiguen, en un pleito posterior entre las mismas partes y sobre la misma causa de acción, las cuestiones ya litigadas y adjudicadas y aquellas que pudieron haber sido litigadas y adjudicadas con propiedad en la acción anterior. *Mun. de San Juan v. Bosque Real, S.E.,* 158 DPR 743, 769 (2003); *Acevedo v. Western Digital Caribe, Inc.,* 140 DPR 452, 464 (1996). Ahora bien, para que se active la presunción de cosa juzgada, es necesario que concurra "la más perfecta identidad entre las cosas, las causas, las personas de los litigantes y la calidad con que lo fueron." 31 LPRA sec. 3343.

En el ámbito administrativo, la doctrina de cosa juzgada puede plantearse en tres vertientes: (1) dentro de la misma agencia; (2) interagencialmente, es decir, de una agencia a otra; y (3) entre las agencias y los tribunales. *Mun. de San Juan, supra; Pagán Hernández v. U.P.R.,* 107 DPR 720 (1978*).* Ahora bien, en cualquiera de estas vertientes, para que prospere la defensa de cosa juzgada, es requisito, además, que: i) la sentencia o resolución dictada en el primer pleito haya sido emitida por una agencia con jurisdicción; ii) la agencia haya actuado en una capacidad judicial (adjudicativa) donde resuelva las controversias ante sí, y iii) las partes hayan

tenido una oportunidad adecuada para litigar. *Pagán Hernández,* 107 DPR a la pág. 734; *Rodríguez Oyola v. Machado Díaz,* 136 DPR 250 (1994); *Vázquez v. Administración de Reglamentos y Permisos,* 128 DPR 513 (1991).

La aplicación por los tribunales de la doctrina de cosa juzgada, en el campo administrativo, es flexible y depende de la naturaleza de la cuestión que se plantea en el ámbito judicial. Así, cuando la naturaleza de lo planteado en el foro administrativo es distinta a la dilucidada en el recinto judicial, lo razonable es no aplicar la doctrina de cosa juzgada. *Rodríguez Oyola,* 136 DPR a la pág. 254.

En este contexto (judicial-administrativo), el foro judicial debe aplicar dicha doctrina cuando las razones para ello estén presentes con toda su fuerza, modificarla, cuando sean necesarias algunas alteraciones, y rechazarla cuando las razones en contra de su aplicación sean de mayor peso que aquellas a su favor. *Pagán Hernández, supra.*

## III.

En primer lugar, concluimos que el TPI no tiene jurisdicción para adjudicar la Demanda. Independientemente de la forma en que la Titular intente caracterizar su reclamación, la realidad es que la misma va dirigida a que el Condominio le pague la cantidad que ella entiende le corresponde del dinero recibido por el Condominio de parte de la aseguradora. No obstante, la distribución de este dinero se consignó en el Plan, el cual fue aprobado unánimemente en la correspondiente asamblea de titulares.

Por tanto, la Demanda realmente va dirigida a impugnar un acuerdo del Consejo de Titulares, por lo cual el TPI no tiene jurisdicción al respecto. Ello porque el Artículo 65 de la Ley 129-2020 le confiere esta facultad, de forma exclusiva, a DACo. 31 LPRA sec. 1923j. En efecto, allí se dispone que, "en condominios con al

menos un apartamento de uso residencial", el DACo tendrá "la jurisdicción ... primaria y exclusiva" para adjudicar cualquier "impugnación[]" a "los acuerdos del Consejo de Titulares". *Íd.*

No tiene razón la Titular al plantear que su derecho es independiente de la validez del Plan. Ello porque la Titular le reclama al Condominio, y su causa de pedir radica en la compensación pagada al Condominio por la aseguradora, para cuya distribución se aprobó, precisamente, el Plan. Su solicitud tendría el efecto inevitable de impugnar el Plan, por lo cual la Titular, en esencia, pretende, a través de la Demanda, impugnar un acuerdo del Consejo de Titulares.

En segundo lugar, e independientemente de lo anterior, la Demanda no presenta una causa de acción viable. La Titular no ha elaborado teoría jurídica alguna bajo la cual ella podría tener derecho a lo reclamado. Contrario a lo que arguye la Titular, la ley delega al Consejo de Titulares lo relacionado con el destino de una indemnización a un condominio, recibida de parte de una aseguradora. Véase Artículo 63 de Ley 129-2020, 31 LPRA sec. 1923h (el Consejo aprobará el "plan de distribución" y "decidirá finalmente, por voto mayoritario, todo lo relacionado a la indemnización"). No conocemos, y la Titular no ha planteado, teoría jurídica alguna que pudiese sustentar la idea de que una aseguradora podría obligar a un condominio en cuanto a la forma de distribuir la indemnización que corresponda.

En tercer lugar, aun si el TPI de algún modo tuviese jurisdicción sobre la Demanda, y aun si la misma pudiese considerarse viable en abstracto, la misma tenía que desestimarse por cosa juzgada. Ello porque, al desestimar la Querella, ya el DACo adjudicó, y derrotó, la médula del planteamiento de la Titular en la Demanda.

Adviértase que, en la Querella, la Titular le solicitó a DACo que le ordenara al Condominio entregarle "el dinero que me pertenece del seguro de mi apartamento" así como la devolución de lo pagado por una "derrama de la pintura" porque ello se le había "cobra[do] … al seguro". Arguyó que el Condominio "qu[ería] dar[l]e $500.00 .. pero … el seguro le otorgó a [su] apartamento $5,037.41". Planteó que el Condominio "qu[ería] repartir el dinero del seguro a su conveniencia". Esto es exactamente lo que plantea la Titular en la Demanda: que el Condominio no le ha entregado la cuantía que ella entiende se le debe de la indemnización entregada por la aseguradora.

Mediante la Decisión Administrativa, DACo concluyó, luego de una vista administrativa, que la Querella no tenía mérito. Determinó que el Condominio había citado una asamblea de titulares (la "Asamblea") para aprobar la "oferta de pago" de la aseguradora y, además, aprobar un "plan de distribución de los fondos para la reconstrucción del edificio", entiéndase, el Plan. De conformidad con el Plan, a la propiedad de la Titular le corresponden $500.00.

DACo determinó que **la Titular había asistido a la Asamblea** y que, en la misma, se "aprobó por **unanimidad**" tanto la oferta de pago de la aseguradora como el Plan. DACo razonó que la Titular pretendía ir "contra sus propios actos", lo cual está prohibido por la ley pertinente y, así, desestimó la Querella.

Aunque la aplicación de la doctrina de cosa juzgada en este contexto es flexible, las circunstancias de este caso claramente aconsejan que se aplique la misma. Ello por la identidad de lo reclamado en la Demanda y la Querella, y porque la Decisión Administrativa se emitió luego de que la Titular fuese escuchada en una vista administrativa y sin que se haya planteado que sea erróneo lo allí decidido.

IV.

Por los fundamentos anteriormente expuestos, se expide el auto de *certiorari*, se revoca la orden recurrida y se ordena la desestimación con perjuicio de la demanda de referencia.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.


Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones